1 **WO**

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

8

9 United States of America,              )   No. CR 01- 017 PHX-JAT
                                         )       CV 04-2766 PHX-JAT (LOA)
10          Plaintiff/Respondent,        )
                                         )
11 vs.                                   )
                                         )   **REPORT AND RECOMMENDATION**
12 Aquileo Melchor-Zaragoza,             )
                                         )
13          Defendant/Movant.            )
                                         )
14 _____     )

15          This matter arises on Movant's Motion to Vacate, Set Aside or Correct Sentence

16 by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (document # 290). Movant has

17 also filed a memorandum in support of his Motion (document # 291). The Government filed

18 a Response to the Motion (document # 298) to which Movant has replied. (document #

19 304).

20                          **BACKGROUND**

21          On June 26, 2001, Movant was charged with: (1) Conspiracy to Commit

22 Hostage Taking (18 U.S.C. §§ 371 and 1203); (2) Hostage Taking (18 U.S.C. §§ 1203 and

23 2); (3) Conspiracy to Harbor Illegal Aliens (8 U.S.C. §§ 1324(a)(1)(A)(iii) and

24 (a)(1)(A)(v)(I)); (4) Harboring Illegal Aliens (8 U.S.C. §§ 1324(a)(1)(A)(iii) and

25 (a)(1)(A)(v)(II)); (5) Possession or Use of a Firearm in a Crime of Violence (18 U.S.C. §§

26 924(c) and 2); and (6) Re-entry After Deportation (8 U.S.C. § 1326(a) enhanced by (b)(1)).

27 (document # 30) After a jury trial, on March 20, 2002, Movant was convicted of counts one

28 through five. (Respondents' Exh. B) Movant had previously pleaded guilty to the count six

1   of the superseding indictment, Re-entry After Deportation.  On June 10, 2002, the Court

2   sentenced the Movant as follows: 327 months for counts one and two; 120 months for

3   counts three, four, and six (to be served concurrently with counts one and two); and 84

4   months for count five (to be served consecutive to counts one through four, and six).  The

5   Court also sentenced Movant to five years of supervised release for counts one, two, and

6   five, and three years of supervised release for counts three, four, and six.  A $600 special

7   assessment was also ordered. (document # 202)  Movant appealed and the Ninth Circuit

8   Court of Appeals affirmed Movant's convictions and sentences on January 5, 2004.

9          Thereafter, Movant filed the pending § 2255 Motion raising the following nine

10  claims: (1) Sentencing enhancements violated his due process and Sixth Amendment rights

11  as set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 124 S.

12  Ct. 2531 (2004) and United States v. Ameline, 376 F. 3d 967 (9th Cir. 2004)[1]; (2) the District

13  Court violated his Due Process and his Sixth Amendment rights by imposing a two-level

14  increase for vulnerable victim; (3) counsel was ineffective in failing to argue that the court

_____

16      [1] After Movant filed his motion citing United States v. Ameline, 376 F.3d 967 (9th Cir. 2004), the Ninth Circuit amended its opinion and superseded on rehearing in United States v. Ameline, ___ F.3d___, 2005 WL 350811 (9th Cir., Feb. 9, 2005) and granted rehearing en banc by United States v Ameline, ___ F.3d ___, 2005 WL 612710 (9th Cir., March 11, 2005).  This order vacated the previous opinion which Movant cites and directed that the panel opinion may not be cited as precedent in any court of the Ninth Circuit, except to the extent that it may be adopted by the en banc court.  See, 2005 WL 612710. Thus, Movant's citations to Ameline as it was decided in 2004 does not state any ground for relief.
        After Movant's conviction was final and after he filed the pending § 2255 motion and his Reply, on June 1, 2005, the Ninth Circuit decided United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005). In Ameline, the court held that "when [the court of appeals] is faced with an unpreserved Booker error that may have affected a defendant's substantial rights, and the record is insufficiently clear to conduct a complete plain error analysis, a limited remand to the district court is appropriate for the purpose of ascertaining whether the sentence imposed would have been materially different had the district court known that the sentencing guidelines were advisory" if so, there is plain error requiring resentencing if defendant so desires, and if not, there is no plain error and the original sentence is merely subject to review for reasonableness. Id. at 1075-75.        In view of the consistency of the appellate court decisions cited at pages 3-10 of this Report and Recommendation which hold that Blakely and Booker do not apply retroactively on collateral review, the Court concludes that Ameline, which is based on those cases, does not apply retroactively on collateral review.   The Ninth Circuit has only held that the procedure set forth in Ameline applies to cases pending on *direct* review at the time that Ameline was decided on June 1, 2005.

1   could not increase his sentence based on facts not charged in the indictment or found by the

2   jury; (4) the rulings of Apprendi, Blakely, and Ameline should apply retroactively to this

3   case; (5) Count One contained five or more charges in violation of Movant's Fifth and Sixth

4   Amendment rights; (6) the Fifth and Sixth Amendment were violated because Movant was

5   charged with multiple conspiracies for a single scheme or plan; (7) the jury instructions

6   broadened the scope of the indictment in violation of Fifth Amendment; (8) the Fifth and

7   Sixth Amendment were violated because Movant was charged with both the possession and

8   brandishing elements of 18 U.S.C. § 924(c); and (9) trial and appellate counsel were

9   ineffective in failing to argue the merits of claims five through eight, in regard to the

10   duplicitous and multiplicitous charges of the indictment.

11   **ANALYSIS**

12   **I. Claims Under Apprendi, Blakely, and Ameline (Claims 1, 2 and 4)**

13            In his first claim, Movant asserts that his sentence was improperly increased

14   based on facts neither charged in the indictment, submitted to a jury, nor proven beyond a

15   reasonable doubt.  Movant's second claim asserts that his constitutional rights were violated

16   when the court imposed a two-level vulnerable victim enhancement, and the facts upon

17   which the enhancement were based were neither charged in the indictment, found by a jury,

18   nor admitted by Movant.  Movant cites Blakely, Apprendi, and Ameline in support of both

19   claims.  (document # 291 at i)  In claim four, Movant asserts that Blakely and Apprendi

20   should be applied retroactively to his case.  In his Reply, Movant expands grounds 1, 2, and

21   4 to include a claim based on United States v. Booker, 125 S.Ct. 738 (2005) which was

22   decided after Movant filed his § 2255 motion. The Court will address these related claims

23   below.

24            **A.  Apprendi Claim**

25            Apprendi was decided in 2000, while Movant's criminal proceedings were on

26   going.  Because Apprendi was decided before Movant's conviction became final, its holding

27   applies to Movant's case.   Movant, however, is not entitled to relief under Apprendi.

28   Apprendi held that "[o]ther than the fact of a prior conviction, any fact that increases the

penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury,

and proved beyond a reasonable doubt." 530 U.S. at 490.  Apprendi, however, did not apply

to the Federal Sentencing Guidelines.  United States v. Hernandez-Guardado, 228 F.3d

1017, 1026-27 (9th Cir. 2000).   As the Eleventh Circuit explained,

> While Apprendi was silent on the issue, its inapplicability to the Sentencing
> Guidelines follows from its holding.  A factual finding under the Guidelines
> determine the sentence within the statutory range rather than outside it.
> Because Apprendi only addresses facts that increase the penalty for a crime
> beyond the statutory maximum, it does not apply to those findings that merely
> cause the guideline range to shift within the statutory range.

United States v. Sanchez, 269 F.3d 1250, 1262 (11th Cir. 2001)(en banc). See, United States

v. Guardado, 228 F.3d 1017, 1026-27 (9th Cir. 2000)(affirming a two-level enhancement

based on a finding under a preponderance of the evidence standard that defendant recklessly

created a substantial risk of death and serious bodily injury where the district court did not

exceed the maximum penalty for the offense charge and therefore did not violate Apprendi.)

Here Movant challenges several sentencing enhancements: (1) enhancement

under U.S.S.G. 3D1.2(b), § 3D1.4, and 1B1.2(d).

*1.  Number of Victims/Sentence on Count One Conspiracy to Commit Hostage Taking* (U.S.S.G. § 1B1.2(d) and § 3D1.2(b), § 3D1.4)

Movant claims that U.S.S.G. § 1B1.2(d), conspiracy to commit more than one

offense,

did not apply because the superseding indictment alleged only one victim in the "body" of

the charging document and alleged "many victims" in the overt acts section.  (document #

291 at 8-9)  Similarly, Movant claims that "there should only be one group count under

U.S.S.G. § 3D1.2(b) and § 3D1.4, instead of 23 . . . ."  (Id. at 9-10)

In essence, Movant claims that the district court violated Apprendi in

determining the number of victims and basing Movant's sentence upon the determination

that there were 23 victims when that information was neither charged in the indictment nor

found beyond a reasonable doubt by the jury.  Movant was sentenced to 327 months

imprisonment on Count I based on the determination that there were 23 victims.

Count I stated that Movant and others "did knowingly and intentionally conspire and agree together to seize and detain and continue to detain *another person* . . . ." (document # 30 at 2) The "Overt Acts" section of Count I stated that "[o]n or about March 23, 2000, Noe Perez-Valtierra, Jorge Camacho-Sanchez, and Apolinar Valtierra-Guerrera, and 20 other illegal aliens were kidnaped at gun point by the defendant and others . . . ." (document # 30 at 2) The jury instruction specific to Count I directed the jury that:

> The defendant is charged in Count I of the superseding indictment with conspiracy to commit hostage taking . . . in order for a defendant to be found guilty of this charge, the *government must prove each of the following elements beyond a reasonable*:
>
> First, beginning on or about March 23, 2000, and ending on or about March 25, 2000, there was an agreement between two or more person to commit the crime of hostage taking as charged in the superseding indictment;
>
> Second, the defendant became a member of the conspiracy knowing at least one of its objects and intending to help accomplish it; and
>
> Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy, with all of you agreeing on a particular overt act that you find was committed.

(document # 160 at No. 23; Respondents' Exh. A at 142-43) The jury found Movant guilty as to Count I. (Respondents' Exh. B at 4;

The superseding indictment alleges 23 victims and the evidence at trial established that more than 200 persons were seized and detained by the group to which Movant belonged.  (document # 179-183) In his § 2255 Motion, Movant does not claim that fewer than 23 victims were involved in the conspiracy.   Movant does not dispute the facts upon which the enhancement was premised.  Rather, he asserts that the government had to prove the number of victims under the "clear and convincing" standard.  (Id.)

Because the superseding indictment alleged 23 victims, and the jury found Movant guilty beyond a reasonable doubt of the charges in Count I which alleged 23 victims, there was no Apprendi violation in sentencing Movant on the basis of 23 victims.

### 2. *Vulnerable Victim Enhancement*

Movant next challenges the vulnerable victim enhancement under U.S.S.G § 3A1.1(b)(1).  (document # 291 at 9-10) Movant claims that all of the victims were

1    "vulnerable" because of their non-resident status and that their status was taken into account

2    in determining the base offense level of Hostage Taking.   Therefore, Movant claims that

3    applying the adjustment for vulnerable victim pursuant to U.S.S.G § 3A1.1(b) amounts to

4    "double counting."  Movant raised this same claim in his objections to the PSR.  (document

5    # 186 at 4) The Court rejected Movant's claim.  (document # 231 at 16) Although Movant

6    bases his challenge to the vulnerable victim enhancement on <u>Apprendi,</u> he does not allege

7    what would amount to an <u>Apprendi</u> violation.  Moreover, Movant concedes that all of the

8    victims were vulnerable. Accordingly, Movant's <u>Apprendi</u> challenge to the vulnerable victim

9    enhancement fails.

10                **A. <u>Blakely</u> Claim**

11              Movant also challenges his sentence under <u>Blakely</u>.  As an initial matter,

12    Respondent asserts that Movant's <u>Blakely</u> claim is procedurally defaulted because Movant

13    did not raise this claim on direct appeal.  The Court need not decide this procedural issue

14    because Movant's claim under <u>Blakely</u> lacks merit.

15              In <u>Blakely</u>, the Supreme Court extended the rule of <u>Apprendi</u> to judicial fact-

16    finding in the sentencing phase.  Here, Movant argues that his sentence violates <u>Blakely</u>

17    because "aggravating facts" were not found beyond a reasonable doubt by a jury.  542 U.S.

18    296 (2004).  Because <u>Blakely</u> was decided after Movant's conviction became final, the Court

19    must determine whether it applies retroactively on collateral review.

20                **1.  Legal Standard**

21              In <u>Teague v. Lane</u>, 489 U.S. 288, 310 (1989), the Supreme Court held that "new

22    constitutional rules of criminal procedure will not be applicable to those cases which have

23    become final before the new rules are announced."  <u>Id.</u> at 310.  A case announces a new rule

24    "if the result was not dictated by precedent existing at the time the defendant's conviction

25    became final."  <u>Id.</u>

26              Two exceptions exist to <u>Teague's</u> prohibition against the application of "new

27    rules" of criminal procedure to cases in which the conviction has already become final.

28    First, a new rule applies retroactively if it places "certain kinds of primary, private individual

1   conduct beyond the power of the criminal law-making authorities to proscribe." <u>Teague</u>,

2   489 U.S. at 311.  Second, a new rule of criminal procedure applies retroactively if it

3   constitutes a "watershed rule[] of criminal procedure implicating the fundamental fairness

4   and accuracy of the criminal proceeding." <u>Saffle v. Parks</u>, 494 U.S. 484, 495 (1990).  The

5   Supreme Court has noted that "[t]his class of rules is extremely narrow." <u>Schriro v.

6   Summerlin</u>, 124 S.Ct. 2519, 2523 (2004).

7           <u>Teague</u> applies only to procedural rules, and not to substantive rules deciding the

8   meaning or scope of a criminal statute. <u>Bousley</u>, 523 U.S. at 620.   A rule is substantive

9   rather than procedural if "it alters the range of conduct or the class of persons that the law

10  punishes." <u>Summerlin</u>, 124 S.Ct. at 2523.  By contrast, "rules the regulate only the manner

11  of determining the defendant's culpability are procedural." <u>Id.</u>  Thus, when a defendant

12  seeks to benefit from a judicial opinion issued after a defendant's conviction, the court must

13  first determine whether the opinion announces a new rule of criminal procedure or whether

14  the rule is substantive.  <u>Id.</u>  If the court determines that the rule is procedural, then the court

15  conducts a three-step <u>Teague</u> analysis.   See, <u>Beard v. Banks</u>, 124 S.Ct. 2504, 2511 (2004).

16  First, the court must determine the date on which the defendant's conviction became final.

17  <u>Beard</u>, 124 S.Ct. at 2510.  Second, the court must "survey the legal landscape as it then

18  existed" and determine whether the court considering the defendant's claim at the time the

19  conviction became final "would have felt compelled by the existing precedent to conclude

20  that the rule [he] seeks was required by the Constitution." <u>Caspari v.  Bohlen</u>, 510 U.S. 383,

21  390 (1994).  Finally, the court must decide whether the rule which the defendant seeks to

22  invoke falls within "one of the two narrow exceptions to the nonretroactivity principle." <u>Id.</u>

23          **2.  <u>Teague</u> Analysis of <u>Blakely</u>**

24          Respondent asserts a <u>Teague</u> argument in opposition to Movant's claim for relief

25  based on <u>Blakely</u>.  The Court, therefore, must determine whether <u>Blakely</u> applies

26  retroactively on collateral review.   <u>Blakely</u> was an expansion of the rule announced in

27  <u>Apprendi</u> that "other than the fact of a prior conviction, any fact that increases the penalty

28  for a crime beyond the prescribed statutory maximum must be submitted to a jury, and

1  proved beyond a reasonable doubt."  In <u>Ring v. Arizona</u>, 536 US. 584, 592-93 (2002), the

2  Supreme Court applied the rule announced in <u>Apprendi</u> to require that a jury, rather than a

3  judge, determine the existence of any aggravating factor required to authorize the imposition

4  of the death penalty under the relevant state sentencing scheme.

5        Thereafter, in <u>Blakely</u>, the Supreme Court extended the rule announced in

6  <u>Apprendi</u> and <u>Ring</u> to invalidate an upward departure under the Washington state sentencing

7  guidelines that was imposed on the basis of facts found by the judge at sentencing, even

8  though the sentence was lower than that statutory maximum for the crime.  The Court held

9  that the sentence violated the Sixth Amendment because the sentence was imposed based on

10  facts that were "neither admitted by [the defendant] nor found by a jury."  <u>Blakely</u>, 124 S.Ct.

11  at 2531.  The Court defined the phrase "statutory maximum" to mean "the maximum

12  sentence a judge may impose solely on the basis of facts reflected in the jury verdict or

13  admitted by the defendant."  <u>Id.</u>

14        The Supreme Court has held that its decision in <u>Ring</u>, <u>Blakely</u>'s predecessor, was

15  "properly classified as procedural."  <u>Summerlin</u>, 124 S.Ct. at 2523.  Similar to the holding in

16  <u>Ring</u>, the holding in <u>Blakely</u> did not alter the range of conduct made criminal by Washington

17  law, and "rested entirely on the Sixth Amendment's jury-trial guarantee, a provision that has

18  nothing to do with the range of conduct a State may criminalize."  <u>Id.</u>  Instead, <u>Blakely</u> and

19  <u>Ring</u>, "altered the range of permissible methods for determining [a defendant's punishment],

20  requiring that a jury rather than a judge find the essential facts bearing on punishment."  <u>Id.</u>

21  As the Court stated in <u>Schriro</u>, "[r]ules that allocate decisionmaking authority in this fashion

22  are prototypical procedural rules . . . ."  <u>Id.</u>  Further, all of the courts of appeals to address

23  the issue have held that <u>Apprendi</u>, the progenitor of both <u>Ring</u> and <u>Blakely</u>, announced a rule

24  of criminal procedure, not a substantive rule.  See, <u>United States v. Swinton</u>, 333 F.3d 481,

25  488-89 (3d Cir. 2003)(citing cases).  Thus, <u>Blakely</u>, like <u>Ring</u> and <u>Apprendi</u>, announced a

26  rule of criminal procedure and this Court must conduct a <u>Teague</u> analysis to determine

27  whether this rule applies to Movant's case on collateral review.

28      **1.  Whether <u>Blakely</u> announced a *New* Rule of Criminal Procedure**

Having determined that <u>Blakely</u> announced a procedural rule, the Court must determine whether <u>Blakely</u> announced a "new" rule of criminal procedure.  To make that determination, the court must: (1) ascertain when Movant's conviction became final, and (2) review the legal landscape existing at the time Movant's conviction became final and decide whether the rule Movant seeks "was dictated by then-existing precedent."  <u>Beard</u>, 124 S.Ct. at 2511.

Movant's conviction became final on April 5, 2004, when the time for filing his appeal expired.  <u>Clay v. United States</u>, 537 U.S. 2004 (conviction becomes final when Supreme Court "affirms a conviction on the merits on direct review or denies a petition for writ of certiorari, or when the time for filing a certiorari petition expires.") Thus, the Court must survey the legal landscape as of April 5, 2004 to determine whether the holding in <u>Blakely</u> was dictated by the precedent existing at the time.

A review of the legal landscape as on April 5, 2004 demonstrates that a district court judge was not prohibited by the then-existing precedent, from determining facts that increased the available sentence under the Sentencing Guidelines without exceeding the statutory maximum  sentence.  All federal appellate courts to consider this issue after <u>Apprendi</u> was decided but before the Supreme Court issued its decision in <u>Blakely</u>, upheld the application of the Sentencing Guidelines against <u>Apprendi</u> challenges. See, <u>United States v. Kelly</u>, 2005 WL 1801668, * 2 (D.OR, July 21, 2005)(stating that before <u>Blakely</u>, every federal court of appeals had held that <u>Apprendi</u> was not applicable to Guidelines calculations made within the statutory maximum); <u>United States v. Samuel</u>, 296 F.3d 1169, 1172 (D.C.Cir. 2002)(stating that "[t]his court and the other courts of appeals have held that <u>Apprendi</u>'s rule does not apply to offense characteristics that enhance a defendant's sentence under the Sentencing Guidelines, but that do not increase the sentence above the statutory maximum for the offense of conviction."); <u>United States v. Fields</u>, 251 F.3d 1041, 1043-44 (D.C.Cir. 2001)("<u>Apprendi</u> does not apply to enhancements under the Sentencing Guidelines when the resulting sentence remains within the statutory maximum."); <u>In re</u> Sealed Case, 246 F.3d 696, 698 (D.C.Cir. 2001)(stating that considering the "<u>Apprendi</u> Court's explicit

1    endorsement" of sentence enhancements within statutory limits, "it is hard to see how the

2    Court could have intended to mandate the heightened standard for application of the

3    Guidelines' enhancement instructions when the resulting sentence remains within the

4    statutory maximum."); United States v. Hernandez-Guardado, 228 F.3d 1017, 1027 (9th Cir.

5    2000); Simpson v. United States, 376 F.3d 679, 681 (7th Cir. 2004)(stating that "before

6    Blakely was decided, every federal court of appeals had held that Apprendi did not apply to

7    guidelines calculations made within the statutory maximum.")

8          After review of the legal landscape that existed when Movant's conviction

9    became final, the Court concludes that Blakely announced a new rule of criminal procedure

10   because there was no binding precedent at the time Movant's conviction became final that

11   required the court to direct the jury to make findings, beyond a reasonable doubt, concerning

12   the appropriate sentencing guideline range, provided the resulting sentence was within the

13   statutory maximum.

14          **2.  Whether Blakely Fits within either of the Teague Exceptions**

15          The Court must next determine whether the Blakely rule fits within an exception

16   to the rule that new rules of criminal procedural do not apply retroactively. As discussed

17   above, retroactive effect is only given to new rules of criminal procedure that: (1) place

18   "certain kinds of primary, private individual conduct beyond the power of the criminal law-

19   making authority to prescribe," or (2) constitute "watershed rules of criminal procedure

20   implicating the fundamental fairness and accuracy of the criminal proceeding." Teague, 489

21   U.S. at 311.  Here, the first exception does not apply because the rule announced in Blakely

22   did not place any kind of conduct beyond the reach of the criminal law.

23          Second, in view of the Supreme Court's decision in Summerlin, 124 S.Ct. at

24   2523, Blakely does not fit within the second exception because it does not constitute the type

25   of watershed rule that implicates either fundamental fairness or accuracy to such a degree to

26   be "implicit in the concept of ordered liberty." Graham v. Collins, 506 U.S. 461, 478

27   (1993).  To the contrary, in Summerlin, the Supreme Court rejected the argument that Ring

28   constituted a watershed rule of criminal procedure, even though Ring, like Blakely,

1   prohibited the enhancement of a sentence beyond the statutory maximum unless a jury found

2   the facts authorizing the enhancement beyond a reasonable doubt.  <u>Summerlin</u>, 124 S.Ct. at

3   2524-26.  In finding that <u>Ring</u> did not constitute a watershed rule, the Court noted that the

4   relevant issue is whether judicial fact-finding so "'seriously diminishe[s]' accuracy that there

5   is an 'impermissibly large risk' of punishing conduct that the law does not reach."  <u>Id.</u> at

6   2525 (quoting <u>Teague</u>, 489 U.S. at 312-313).  The Court found it "implausible" that "judicial

7   factfinding so seriously diminishe[s] accuracy as to produce an impermissibly large risk of

8   injustice."  <u>Id.</u> Thus, because the Supreme Court has rejected the argument that <u>Ring</u>

9   constitutes a watershed rule of criminal procedure, and because <u>Ring</u> is the immediate

10  predecessor to <u>Blakely</u> and because its reasoning is indistinguishable from <u>Blakely</u>, <u>Blakely</u>

11  does not constitute a watershed rule of criminal procedure that may be applied retroactively

12  on collateral review.  See, <u>Cook</u>, 386 F.3d at 950 (<u>Blakely</u> not retroactively applicable to

13  case involving a successive § 2255 motion); <u>United States v. Sanchez-Cervantes</u>, 282 F.3d

14  664, 671 (9th Cir. 2000)(<u>Apprendi</u> is not retroactively applicable to § 2255 cases on

15  collateral review).

16          Indeed  all courts that have considered the question have held that the extension

17  of the <u>Apprendi</u> rule announced in <u>Blakely</u> does not apply retroactively to cases on collateral

18  review. See, <u>United State v. Quintero-Araujo</u>, 343 F.Supp.2d 935, 942 (D.Idaho 2004);

19  <u>United States v. Stoltz</u>, 325 F.Supp.2d 982, 987 (D.Minn. 2004); <u>Orchard v. United States</u>,

20  332 F.Supp.2d 275, 277 (D.Me. 2004); <u>Concepcion v. United States</u>, 328 F.Supp.2d 372,

21  374 (E.D.N.Y. 2004); <u>Tisdale v. United States</u>, 2004 WL 2782725, * 7 (D.Kan. Sept. 22,

22  2004); <u>United States v. Stancell</u>, 346 F.Supp.2d 204 (D. D.C. 2004).  This Court agrees with

23  the reasoning of these cases and similarly finds <u>Blakely</u> nonretroactive in this case where

24  Movant's conviction was final before <u>Blakely</u> was announced.

25          Because <u>Blakely</u> does not apply retroactively to this case on collateral review,

26  Movant's challenge to the sentencing enhancement under the rule announced in <u>Blakely</u>

27  fails.

28          **C.  <u>Booker</u> Claim**

1    Movant further claims that his sentencing enhancements violated the rule

2  announced in Booker.  In Booker, the Supreme Court applied the rule of Blakely to the

3  United States Sentencing Guidelines and held that the Guidelines, as written, violate the

4  Sixth Amendment principles articulated in Blakely.  United States v. Booker, 543 U.S. ___,

5  125 S.Ct. 738, 749-56 (2005).  The Supreme Court severed and excised the provision

6  making the Guidelines mandatory and declared the Guidelines advisory.  Id.   Booker was

7  not decided until January 12, 2005 well after Movant's conviction and sentence were final.

8    Movant's claim based on Booker fails because that case does not apply

9  retroactively on collateral review.  Booker reiterates the ruling stated in Apprendi and

10  Blakely that "'[o]ther than the fact of a prior conviction, any fact that increases the penalty

11  for a crime beyond the prescribed statutory maximum must be submitted to a jury, and

12  proved beyond a reasonable doubt.'"  Booker, 543 U.S. ____, 125 S.Ct. at 746 (quoting

13  Apprendi, 530 U.S. at 490).   To determine whether Booker applies retroactively on

14  collateral review, the court must engage in a multi-step analysis.  First, the court must

15  determine whether Booker announced a new rule.  A "case announces a new rule if the result

16  was not dictated by precedent existing at the time the defendant's conviction became final."

17  Teague v. Lane, 489 U.S. 288, 301 (1989)

18    Here, Movant's conviction became final in April of 2004.  Booker was issued on

19  January 12, 2005.  Booker, is a new rule for the purposes of this case because at the time

20  Movant's conviction became final, there was no precedent suggesting that the federal courts

21  should consider the Sentencing Guidelines advisory.

22    Second, the court must determine whether the new rule is procedural or

23  substantive.  A rule is substantive if it alters the course of conduct or the class of persons

24  that the law punishes.  Schriro v. Summerlin, 542 U.S. 348 (2004).  On the other hand,

25  "rules that regulate only the manner of determining the defendant's culpability are

26  procedural."   The rule announced in Booker is procedural because it only regulates the

27  manner of determining a defendant's sentence.  See, United States v. Brown, 2005 WL

28  1463531, * 2 (D.Alaska 2005).

- 12 -

New procedural rules generally do not apply retroactively.  Retroactive effect is only given to "watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding.  Summerlin, 542 U.S. 348.  In Booker, the Supreme Court stated that Booker applies "to all cases on direct review" but did not mention collateral review.  125 S.Ct. at 769.  Every court that has considered whether Booker applies retroactively to cases on collateral review had held that it does not. See,  United States v. Brown, 2005 WL 1463531, * 3 (D. Alaska, April 28, 2005); United States v. Green, 2005 WL 237204, * 1 (2d Cir., Feb. 2, 2005); Humphress v. United States, 398 F.3d 855, 860(6th Cir. 2005)(in the context of an initial § 2255, holding that Booker does not apply retroactively on collateral review); McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005); United States v. Leonard, 2005 WL 139183, at * 1 (10th Cir., Jan. 24, 2005); Varela v. United States, 400 F.3d 864, 868 (11th Cir. 2005)(in the context of an initial § 2255, holding that Booker falls into the category of new rules of criminal procedure that are not retroactively applicable on collateral review); Guzman v. United States, 404 F.3d 139, 141 (2d Cir. 2005)(Booker not applicable on collateral review where defendant's conviction was final as of January 12, 2005, the date Booker issued); Hewett v. United States, ___ F.Supp.2d ___, 2005 WL 133116, * 4 (D.H., May 20, 2005)("Every federal court of appeals to address the question of whether Blakely or Booker are retroactive to initial cases on collateral review . . . has held that they are not."); United States v. Wrenn, 2005 WL 1389060, * 2 (D.Or., May 10, 2005)(same).

Because Booker does not apply retroactively on collateral review, Movant's Booker claim fails.

**II.  Duplicity of Counts One and Two (Claim 5)**

In his fifth claim for relief, Movant asserts that Count One and Two of the Superseding Indictment are duplicitous because Count One contained five or more possible charges and Count Two entwines "conspires and attempts" with "aiding and abetting." (document # 291 at 34-37)

- 13 -

Count One of the Superseding Indictment charges Movant with Conspiracy to Take Hostages and sets forth the elements of that offense.  Although the hostage taking statute includes an "attempt" provision, the Superseding Indictment does not include the word "attempt." Specifically, Count One charged that:

> On or about March 23, 2000 through or about March 25, 2000 in the District of Arizona or elsewhere, defendant AQUILEO MELCHOR-ZARAGOZA . . . and others known and unknown to the Grand Jury, did knowingly and intentionally conspire and agree together to seize and detain and continue to detain another person in order to compel a third person to do an act, to wit: pay money, as an explicit and implicit condition for the release of said person seized and detained. . . . In violation of Title 18 United States Code, Sections 371 and 1203.

(Document # 30 at 1-2)

Title 18 U.S.C. § 371 is the general conspiracy statute, and 18 U.S.C. § 1203 is the hostage taking statute.  Movant claims that the language of §1203 indicates that Count One contained duplicitous charges.

Section 1203 provides that :

> (a) except as provided in subsection (b) of this section, whoever, whether inside or outside the United States, seizes or detains and threatens to kill, to injure, or continue to detain another person in order to compel a third person or governmental organization to do or abstain from doing any act as an explicit or implicit condition for the release of the person detained, *or attempts, or conspires to do so*, shall be punished by imprisonment.

18 U.S.C. § 1203(a) (emphasis added).  Because Count One alleges conspiracy in violation of 18 U.S.C. § 371 and also alleges conspiracy to commit a crime under § 1203, and § 1203 contains its own conspiracy and attempt provisions, Movant claims that Count One actually charged him with "conspiracy, attempt, attempting to conspire, conspiring to attempt, or conspiring to conspire."  (document # 291 at 35) Movant further claims that "attempting to conspire" and "conspiring to conspire" are not federal offenses.  (document # 291 at 35) Movant also claims that the prosecutor admitted on the record that after the indictment was filed she realized she did not have to charge Movant under the general conspiracy statute, §

371, because § 1203 contains its own conspiracy language.[2]  (See document # 291 at 34-35) ( Movant does not give sufficient citation to locate this admission in the record).  Movant claims that because the jury used general verdict forms, there is no way of knowing which of these statutes the jury convicted him of violating, and that it is possible that he was convicted of a nonexistent federal offense.

Contrary to Movant's assertion, the jury returned a specific verdict form, not a general form as Movant suggests.  The jury's verdict reads: "We, the jury, find the defendant, Aquileo Melchor-Zaragoza, as to Count 1: Conspiracy to Commit Hostage Taking: Guilty.  We, the jury, find the defendant, Aquileo Melchor-Zaragoza, as to Count 2: Hostage Taking: Guilty."  (Document # 149).  The verdict did not mention attempt.  Movant was convicted of Conspiracy to Commit Hostage Taking as charged in Count One and Hostage Taking as charged in Count Two, both of which are valid federal offenses.

Movant further claims that Count Two is duplicitous because it entwines the "conspires and attempts" language from 18 U.S.C. § 1203 with the "aiding or abetting" language of 18 U.S.C. § 2.  The Court finds no validity in this argument.  Count Two of the Superseding Indictment charges that:

> On or about March 23, 2000, in the District of Arizona and elsewhere, defendants AQUILEO MELCHOR-ZARAGOZA . . . and others known and unknown to the Grand Jury, did knowingly and intentionally seize and detain, as well as aid and abet, and continue to detain Noe Perez-Valtierra, Jorge Camacho-Sanchez, and Apolinar Valtierra-Guerrera in order to compel others to do an act, to wit: pay money as an explicit and implicit condition for the release of the persons seized and detained.  In violation of Title 18 United States Code, Sections 1203 and 2.

(Document # 30 at 2-3).

Title 18 U.S.C. § 2 provides that " [w]hoever commits an offense against the United States or aids,  abets, counsels, commands, induces or procures its commission, is punishable as a principal."  18 U.S.C. § 2(a).  Citing this section in Count Two does not

---

[2]  There is no evidence in the record supporting Movant's assertion that the prosecutor stated that she did not need to charge Movant under 18 U.S.C. § 371 in view of the conspiracy language contained in 18 U.S.C. § 1203.

1  render the count duplicitous, rather it clarifies that Movant could be charged under 18 U.S.C.

2  §1203 as a principal even if he only aided and abetted the hostage taking.

3         In view of the clear text of the indictment and the verdict, the distinctions

4  between Counts One and Two are clear, and there is no basis to conclude that Movant was

5  convicted of a nonexistent federal offense or faced duplicitous charges.  Accordingly,

6  Movant's fifth claim for relief fails.

7  **III.  Multiple Conspiracy Charges (Claim Six)**

8         In his sixth claim for relief Movant claims that the Government violated his Fifth

9  and Sixth Amendment rights by dividing a single conspiracy to effect a common scheme or

10  plan into five separate conspiracies.  Under Movant's theory, Count One alleges two

11  conspiracies (under18 U.S.C. §§ 371 and 1203); Count Two alleges one (under 18 U.S.C.

12  §1203); Count Three alleges one (under 8 U.S.C. § 1324); and Count Four alleges a fifth

13  conspiracy (under 8 U.S.C. § 1324), leading to a "multiplicitous scenario," where there is a

14  "danger" of punishing Movant multiple times for the same conduct.  (Document # 291 at 39)

15  Contrary to Movant's assertion, the Superseding Indictment does not improperly cast one

16  conspiracy as multiple conspiracies.  (See document # 30).  The Superseding Indictment

17  charged Movant with violating two separate conspiracy statutes: Conspiracy to Commit

18  Hostage taking in violation of 18 U.S.C. §§ 371 and 1203 (count one) and Conspiracy to

19  Harbor Illegal Aliens in violation io 8 U.S.C. § 1324(a)(1)(A)(iii) (count three).

20         "It is well settled that a single transaction can give rise to distinct offenses under

21  separate statutes without violating the Double Jeopardy Clause.  This is true though the

22  'single transaction' is an agreement or conspiracy."  American Tobacco Co. v. United States,

23  328 U.S.781 (1946).  In Albernaz v. United States, 450 U.S. 333 (1981), the Supreme Court

24  upheld consecutive sentences for two conspiracy charges arising from a single agreement or

25  conspiracy having dual objectives.  The Court held that because the conspiracy violated two

26  different statutes, the two different charges – conspiracy to import marijuana in violation of

27  21 U.S.C. § 963 and conspiracy to distribute marijuana in violation of 21 U.S.C. § 846 -

28  were not multiplicitous.  Id. at 140-41.  The Court stated that when Congress has created two

1   separate offenses that applied to a single multi-objective conspiracy, the issue is whether

2   Congress intended that separate punishment be imposed for each offense.  450 U.S. at 337.

3   In the absence of clear Congressional intent, the Court applied the rule of <u>Blockburger v.</u>

4   <u>United States</u>, 284 U.S. 299 (1932).  <u>Albernaz</u>, 450 U.S. at 337.  "Under <u>Blockburger,</u>

5   Congress is deemed to have intended multiple punishments if each offense required proof of

6   a fact the other does not." <u>U.S. v. Alerta</u>, 96 F.3d 1230, 1237 (9th Cir. 1996)(citing 284 U.S.

7   at 304), overruled on other grounds, <u>United States v. Nordby</u>, 225 F.3d 1053 (9th Cir. 2000).

8   "The applicable rule is that where the same act or transaction constitutes a violation of two

9   distinct statutory provisions, the test to be applied to determine whether there are two

10   offenses or only one, is whether each provision requires proof of a fact which the other does

11   not." <u>Blockburger</u>, 284 US at 304.

12          Here, Movant was charged with, and convicted of, Conspiracy to Take Hostages

13   in violation of 18 U.S.C. § 1203, and Conspiracy to Harbor Undocumented Aliens in

14   violation of 8 U.S.C. § 1324.  (Respondents' Exh. A, B)  Title 18 U.S.C. § 1203 and 8

15   U.S.C. § 1324 have separate elements and require proof of distinct facts, as can be

16   demonstrated by the text of the statutes, as well as by the jury instructions given at Movant's

17   trial:

18
19          The defendant is charged in Count 1 of the superseding indictment with conspiracy to
       commit hostage taking in relation violation of Section 1203 of Title 18 of the United
20     States Code.  In order for defendant to be found guilty of this charge, the Government
       must prove each of the following elements beyond a reasonable doubt:

21          First, beginning on or about March 23, 2000, and ending on or about March 25,
22     2000, there was an agreement between two or more persons to commit the crime of
       Hostage Taking as charged in the superseding indictment;

23
24          Second, the defendant became a member of the conspiracy knowing of at least
       one of its objects and intending to help accomplish it; and

25
26          Third, one of the members of the conspiracy performed at least one overt act for
       the purpose of carrying out the conspiracy, with all of you agreeing on a particular
27     overt act that you find was committed.

28

1

2       An overt act does not itself have to be unlawful.  A lawful act may be an element
        of a conspiracy if it was done for the purpose of carrying out the conspiracy.  The
3       government is not required to prove that the defendant personally did one of the overt
        act.

4    (Document # 160 at No. 23.)

5       The court further instructed the jury that:

6
        The defendant is charged in Count 3 of the superseding indictment with Conspiracy
7       to Harbor Aliens in violation of Section 1324(a)(1)(A)(v)(I) of Title 8 of the United
        States Code.  In order for a defendant to be found guilty of these charges, the
8    government        must prove each of the following elements beyond a reasonable doubt:

9       First beginning on or about March 23, 2000, and ending on or about March 25, 2000,
          there was an agreement between two or more persons to commit the crime of harboring
10         illegal aliens;

11      Second, the defendant became a member of the conspiracy knowing at least one of
        its    objects and intending to help accomplish it.
12

13   (Document # 160 at No. 28)

14          The Defendant is charged in Count 4 of the superseding indictment with
            concealing, harboring and shielding from detection of certain aliens in
15          violation of Section 1324(a)(1)(A)(iii) of Title 8 of the United States
            Code.  In order for the defendant to be found guilty of this charge, the
16          Government must prove each of the following elements beyond a reasonable
            doubt:
17
            First, that one or more of the people harbored were aliens;
18
            Second, that these aliens were not lawfully in the Unite States;
19
            Third, that defendant knew or acted in reckless disregard of the fact that
20          these aliens were not lawfully in the United States;

21          And fourth, the defendant concealed, harbored or shielded from detection
            these aliens for the purpose of avoiding these aliens' detection by immigration
22          authorities.

23          An alien is a person who is not a natural-born or naturalized citizen of the
            United States.  An alien is not lawfully in this country if the person was not
24          duly admitted by an Immigration Officer.

25   (Respondents' Exh. B at 148-49)

26          Although Movant's claim relies in part on the decisions of Launius v. United

27   States, 575 F.2d 770 (9th Cir. 1978), and Alerta v. United States, 96 F.3d 1230 (9th Cir.

28   1996), *overruled on other grounds*, his case is distinguishable from both of these cases.  In

Launius, the court deemed multiplicitous two counts of conspiracy arising from the same drug smuggling venture.  575 F.2d at 771.  However, each of the conspiracy counts alleged a violation of the same statute.  Id.  Unlike Lanius, in the instant case, the two conspiracy charges were brought under  different statutes.

Movant also relies on Alerta.  In Alerta, the defendant was charged with a general violation of a conspiracy statute, 18 U.S.C. §371, and with a specific charge of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846.  96 F.3d at 1239. Unlike Alerta, Movant's case does not involve one general charge and one specific charge which overlap.  Rather, Movant was specifically charged with Conspiracy to Commit Hostage Taking in Count One (in violation of 18 U.S.C. §§ 1203 and 371) and with Conspiracy to Harbor Illegal Aliens in Count Two (in violation of 8 U.S.C. § 1324).  Each count charged a violation of a different statute with different elements.  In view of the foregoing, Movant's sixth claim for relief fails.

**IV.  Constructive Amendment as Related to Claims Five and Six (Claim 7)**

In his seventh claim for relief Movant argues that because of the alleged duplicitous offenses charged in Count One (as discussed in claim five) and the multiplicitous conspiracy charges (as discussed in claim six), the indictment was constructively amended in violation of the Fifth and Sixth Amendment.  Because this claim relies on the theories advanced in claims five and six, and the Court has concluded that  these claims lack merit, Movant's seventh claim also fails.  / / /

/ / /

/ / /

**V.  Terminology of the Firearms Charge in Count Five (Claim 8)**

In his eighth claim for relief, Movant claims that Count Five of the Indictment, which charges a violation of 8 U.S.C. § 924(c), is incorrectly charged and that the jury instructions amended the Indictment. (document # 291 at 45)

Title 18 U.S.C. § 924(c) applies to "any person who, *during and in relation to any crime of violence or drug trafficking crime . . . uses or carries* a firearm, or who, *in*

1   *furtherance of* any such crime, *possesses* a firearm."  18 U.S.C. § 924(c)(1)(A) (1998)

2   (emphasis added).  Movant claims that this language refers to two separate and distinct

3   offenses: (1) using or carrying a firearm *during and in relation to* a crime of violence, and

4   (2) possessing a firearm *in furtherance of* a crime of violence.  Movant claims that Count

5   Five of the Superceding Indictment, as well as the jury instructions and verdict form, "mis-

6   matched" or "cross-matched" the elements of these two offenses and, therefore, the

7   distinction between the offenses was not clear to the jury, and that his sentence under Count

8   Five should be vacated.  (document # 291 at 43)

9       In support of his argument, Movant relies on United States v. Combs, 369 F.3d 925,

10  934 (6th Cir. 2004), which held that an indictment that mixed elements of the "during and in

11  relation to" clause and the "in furtherance of" clause of 18 U.S.C. § 924(c) could not be

12  reasonably construed to charge a crime under federal law.  In Combs, the indictment charged

13  the defendant with "possess[ing] a firearm during and in relation to" the crime.  Id. at 934.

14  The Sixth Circuit held that "[i]ndicting Combs based on the *conduct* from the § 924(c)

15  'possession' offense in conjunction with the *standard of participation* (during and in relation)

16  from the other 'use' offense results in a failure to charge him with *any* codified federal

17  crime."  Id. (emphasis in original).

18      Count Five of Movant's Superseding Indictment (document # 30) states that:

19      On or about March 23, 2000, in the District of Arizona, defendants . . . did possess,
20      carry, and brandish a firearm, to wit, a semi-automatic pistol, during and in relation
        to a crime of violence, that is, Hostage Taking as alleged in Count Two, a felony
        crime prosecutable in a Court of the United States.

21      In violation of Title 18, United States Code, Sections 924(c) and 2.
22
23  (document # 30) Movant claims that, like Combs, by using the terms of the two clauses

24  interchangeably, the  indictment was incorrectly charged.  The indictment's language does

25  not exactly match that of the statute, charging possession "during and in relation to" the

26  crime, as opposed to "in furtherance of" the crime.  Although Combs is similar to Movant's

27  case, the Ninth Circuit does not share the views of the Sixth Circuit on this matter.
28

1    Movant may challenge an allegedly defective indictment at any time, but because he

2    does so at this late stage, the Court liberally construes the indictment in favor of its validity.

3    Id.  The Ninth Circuit has held that, "[w]hen the sufficiency of the indictment is challenged

4    after trial it is only required that 'the necessary facts appear *in any form* or *by fair*

5    *construction* can be found within the terms of the indictment.'"  Id. at 1317 (quoting

6    Kaneshiro v. United States, 445 F.2d 1266, 1269 (9th Cir. 1971)) (emphasis added in James).

7    If an indictment refers to the statute under which the defendant is charged, and that statute

8    clearly details the elements of the offense charged, this reference may be sufficient to cure

9    the defects of the indictment.  See, e.g., United States v. Ruelas, 106 F.3d 1416 (9th Cir.

10   1997) ( ruling that an indictment referring to 18 U.S.C. § 924(c), using the terms "use or

11   carry" in the heading, and alleging possession of a weapon during the offense, included

12   sufficient information to be valid); but see, Givens v. Housewright, 786 F.2d 1378, 1381 (9th

13   Cir. 1986) (deciding indictment was not sufficient when it referred to a statute that simply

14   defined the degrees of murder, but not the specific murder charge facing the defendant).  In

15   Movant's case, the indictment plainly listed both the possession and carrying acts, the during

16   and in relation to standard, and made reference to 18 U.S.C. §924(c), which clearly lists the

17   elements of the offense.  The terms of the indictment together with the reference to the

18   statute provided the necessary facts.  Under this standard, the indictment was sufficiently

19   clear and valid.

20       Movant also claims that the jury instructions[3] in regard to 18 U.S.C. § 924(c)

21   constructively amended the indictment by adding a new charge.  The jury instructions not

22   only included possession in the "during and relation to" clause, but also added the

23   "possession in furtherance" language that had not appeared in the text of the indictment.

24   Movant claims that this additional language added a new charge of possession in furtherance

25   of the crime.  Contrary to Movant's claims, possession in furtherance of the crime was not a

26

27       [3]The jury instructions stated that Movant was, "charged with possessing, carrying, or
brandishing a firearm during and in relation to hostage taking, or possessing a firearm in
28   furtherance of hostage taking, in violation of 924(c) of Title 18 of the United States Code."

1    new charge, but rather it was a part of the originally indicted firearms charge under 18

2    U.S.C. § 924(c), the text of which could have been found in the referenced statute.

3          Finally, Movant claims that because of the variations in the possession offense

4    language, the verdict[4] was not sufficiently clear to determine what the jury found in relation

5    to Count Five.  This Court disagrees.  Regardless of any discrepancy in the possession

6    language, the jury found Movant guilty of possession or use of a firearm in relation to a

7    crime of violence and the jury  further found Movant guilty of use, carrying, brandishing a

8    firearm in relation to a crime of violence.  (Respondents' Exh. B at 4-5).  The verdict does

9    not include the language "possession in furtherance of a crime of violence" as Movant

10   claims.  Movant is correct that in instructing the jury, the court stated that "the defendant

11   used, possessed, carried, or brandished a firearm in furtherance of hostage taking."

12   (Respondents' Exh. B at 151) However, because the jury found Movant guilty of the more

13   serious crime of using, carrying, or brandishing a firearm in relation to a crime of violence,

14   Movant suffered no prejudice as a result of the wording of the instructions.

15         Because the indictment was sufficiently charged, the jury instructions did not amend

16   the indictment, and the jury found Movant guilty of the offense under Count Five, therefore,

17   Movant's eighth claim fails.

18   **V. Ineffective Assistance of Counsel (Claims 3 and 9)**

19        **1.  Failure of Counsel to Raise Claims Five Through Eight (Claim 9)**

20         In his ninth claim, Movant asserts that trial and appellate counsel rendered ineffective

21   assistance by failing to object to, preserve, or appeal the issues of duplicitous charging and

22   constructive amendments presented in claims five through eight of Movant's § 2255 Motion.

23   In order to prove a claim of ineffective assistance of counsel, Movant must demonstrate that

24

25         [4]The verdict stated,

26   Possession or Use of A Fire Arm in Relation to a Crime of Violence, guilty.  If found
     guilty of Possession, we further find the defendant guilty of Use of a Firearm in Relation
27   to a Crime of Violence, guilty of Carrying a Firearm in Relation to a Crime of Violence,
     and guilty of Brandishing a Firearm in Relation to a Crime of Violence.
28

1   (1) counsel's performance was unreasonable under prevailing professional standards; and (2)

2   he was prejudiced thereby.  <u>Strickland v. Washington</u>, 466 U.S. 668, 688-692 (1984).  If

3   Movant cannot establish the prejudice aspect of the <u>Strickland</u> analysis, there is no need to

4   examine the performance prong.  <u>Id.</u> at 697.  In examining an ineffective assistance of

5   counsel claim the court will "strongly presume that counsel's conduct was within the wide

6   range of reasonable assistance, and that he exercised acceptable professional judgement in

7   all significant decisions made."  <u>Id.</u> at 689.

8           To establish prejudice under the <u>Strickland</u> test, Movant must establish a "reasonable

9   probability that but for counsel's unprofessional errors, the result would have been

10  different."  <u>Id.</u> at 694.  In this case, Movant claims he was prejudiced because if counsel had

11  pursued the issues he raised in claims five through eight of his § 2255Motion, his sentence

12  would have been shorter, his special assessment would have been reduced, and his case

13  would have been a 'dead-bang' winner."  (Document # 304 at 40).  However, as

14  demonstrated in sections two through four above, Movant's arguments in claims 5-8 lacked

15  merit.  Therefore, there is no reasonable probability "sufficient to undermine confidence in

16  the outcome" as required <u>Strickland</u>.  <u>Strickland</u>, 466 U.S. at 694.  Because the claims were

17  invalid, the outcome of his conviction or sentencing would not have changed had counsel

18  raised them at trial or appeal.  Movant fails to demonstrate that but for counsel's alleged

19  error the result would have been different.

20          The Ninth Circuit considered a similar situation in <u>Baumann v. United States</u>, 692

21  F.2d 565 (9th Cir. 1982).  In <u>Baumann</u>, the movant claimed that his indictment was invalid

22  due to multiplicitous and duplicitous charges, and that counsel was ineffective in not

23  challenging the indictment.  The Court decided that the movant "could not conceivably be

24  prejudiced by his counsel's failure to move for dismissal of any of the counts of the

25  indictment because, as the district court concluded, they were not defective as a matter of

26  law."  <u>Id.</u> at 572.  Like <u>Baumann</u>, because Movant's claim of ineffective assistance is based

27  on a legally invalid theory, Movant cannot have been prejudiced by his counsel's decisions.

28  "The failure to raise a meritless legal argument does not constitute ineffective assistance of

1    counsel."  Id.  It was well within counsel's professional discretion to not pursue the

2    arguments asserted in Movant's fifth through eighth claims.

3          By failing to show prejudice, Movant has failed to establish a claim of ineffective

4    assistance of counsel.

5          **2.   Failure to pursue an <u>Apprendi</u> Claim (Claim 3)**

6          In his third claim, Movant argues that trial counsel was ineffective in failing to pursue

7    a claim under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), which held that "any fact that

8    increases the penalty for a crime beyond the prescribed statutory maximum must be

9    submitted to a jury, and proved beyond a reasonable doubt."  <u>Apprendi</u>, 530 U.S. at 490.

10   Movant claims that trial counsel failed to argue an <u>Apprendi</u> violation during sentencing and

11   failed to preserve an <u>Apprendi</u> issue for appeal.  Movant contends that:

12   It is clear that counsel could have but did not investigate case law such as <u>Apprendi v.</u>
13   <u>New Jersey</u>, and the multitude of cases that developed as a direct result of the U.S.
     Supreme Court's decision in <u>Apprendi</u>.  Counsel could have, and should have, known
14   that <u>Apprendi</u> changed what used to be viewed as "sentencing factors" to elements of
     the offense that must now, instead of being found by the sentencing judge by a
15   preponderance of the evidence standard, be submitted to the jury and proven beyond
     a reasonable doubt.

16   (document # 291 at 23-24 (internal citation omitted)).

17         Movant's claim fails because the record indicates that trial counsel *did* raise the

18   <u>Apprendi</u> issue with the Court on more than one occasion.  Movant's counsel filed a Motion

19   Re: <u>Apprendi</u> and Requirement of Necessary Elements for Count 5 of Indictment (document

20   # 82) on February 4, 2002.  This Motion argued that due to the ruling in <u>Apprendi</u> as well as

21   <u>McMillan v. Pennsylvania</u>, 477 U.S. 79, 87-88 (1986), the issue of whether the defendant

22   brandished a weapon under 18 U.S.C. 924(c) should be presented to the jury, because if

23   found to be true, it would increase the statutory maximum sentence from five years to seven

24   years.  (Document # 82 at 1-2).  Counsel also brought to the Court's attention <u>United States</u>

25   <u>v. Harris</u>, 243 F.3d 806 (4th Cir. 2001), attaching a copy of the 4th Circuit opinion to his

26   Motion.  (<u>Id.</u> at exhibit A).  At the time, the United States Supreme Court had granted

27   certiorari in <u>Harris</u> as to the issue of whether a statute that increases the mandatory minimum

28

1    is an issue that should be given to a jury for proof beyond a reasonable doubt.    At the

2    Motion Hearing before the Honorable James A. Teilborg on March 11, 2002, Movant's

3    counsel referred to the aforementioned Motion, and again asked that the issue of brandishing

4    under 18 U.S.C. § 924(c) be presented to the jury for proof beyond a reasonable doubt, in

5    accordance with Apprendi, and the pending Harris case.  Contrary to Movant's assertion,

6    counsel did research the applicable case law applying the rule announced in Apprendi and

7    raised an Apprendi claim to the district court.   Counsel pursued an Apprendi claim, in other

8    words, he took the very action which Movant asserts counsel was ineffective in failing to

9    take.   Because counsel did pursue an Apprendi claim, Movant's claim of ineffective

10   assistance of counsel based on counsel's failure to pursue an Apprendi claim fails.

11          In accordance with the foregoing,

12          **IT IS HEREBY RECOMMENDED** that Movant's Motion to Vacate, Set Aside or

13   Correct Sentence pursuant to 28 U.S.C. § 2255 (document #290) be **DENIED**.

14          This recommendation is not an order that is immediately appealable to the Ninth

15   Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

16   Appellate Procedure, should not be filed until entry of the District Court's judgment.  The

17   parties shall have ten days from the date of service of a copy of this recommendation within

18   which to file specific written objections with the Court.  *See,* 28 U.S.C. § 636(b)(1); Rules

19   72, 6(a), 6(e), Federal Rules of Civil Procedure.  Thereafter, the parties have ten days within

20   which to file a response to the objections.  Failure timely to file objections to the Magistrate

21   Judge's Report and Recommendation may result in the acceptance of the Report and

22   Recommendation by the District Court without further review.  *See United States v. Reyna-*

23   *Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any factual

24   determinations of the Magistrate Judge will be considered a waiver of a party's right to

25   appellate review of the findings of fact in an order or judgment entered pursuant to the

26   Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

27          DATED this 29th day of August, 2005.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Lawrence O. Anderson
United States Magistrate Judge

24

25

26

27

28